SAMUEL, Judge.
This is a suit for $3,137.50, the balance due on a used 1968 station wagon delivered by plaintiff to the defendant. Defendant’s answer admitted the sum was unpaid but averred the reason for non-payment was “beyond his control”. Acting on a plaintiff motion, the trial court rendered judgment on the pleadings in plaintiffs favor under LSA-C.C.P. Art. 965. On appeal we reversed and remanded.[1] After trial on the merits following the remand there was judgment in plaintiff’s favor, as prayed, for $3,137.50. Defendant has appealed and the matter is now before us on the merits.
The testimony establishes the facts as pleaded by the plaintiff are substantially correct. On May 28, 1969 defendant agreed to buy the vehicle for $3,162.50. He deposited $25 to hold the car until he could apply to Sealco Federal Credit Union for a loan. Several days after the application was made plaintiff’s sales manager was told in a telephone conversation with a Miss Liquor, a Sealco representative, that defendant’s loan had been approved. As is apparent from the uncontradicted testimony of those two persons, the approval was without qualification or condition. The station wagon then was delivered to the defendant.
Again withoug contradiction, the sales manager testified that loan arrangements for financing automobiles are customarily transacted and concluded by telephone when a federal credit union is concerned. Thus, plaintiff relies on the verbal assurance of credit union officials that loans have been approved and will deliver a vehicle to the borrower on this assurance.
In this case a promissory note secured by chattel mortgage was to be delivered to the credit union before the latter issued its check. The note and mortgage were delivered to Sealco on June 25, 1969. However, two days before that date the defendant was involved in an automobile accident which damaged the station wagon to the extent of $944.62. Sealco refused to honor its loan commitment because of the reduction of the value of the collateral. Defendant then took the position he did not own the car, that the ownership remained in plaintiff, because the latter had not received the purchase price.
Relative to the first appeal plaintiff had alleged Sealco had unconditionally approved the loan when the car was delivered. The defendant had denied that allegation for lack of sufficient information to justify belief. We pointed out in our opinion :
“The foregoing summary of the pertinent pleadings shows a genuine issue of a material fact. If the $25 payment was a ‘deposit’ as alleged to ‘hold the automobile’ until the purchaser’s loan application was approved, there was at that time (May 28, 1969) no completed sale, *849 but at most a conditional obligation dependent upon an uncertain event. The condition of loan approval was a suspen-sive condition. .
The plaintiff alleged that it delivered possession of the automobile to Campbell after assurance from Sealco that the loan application had been approved. This is denied by Campbell. Whether or not the suspensive condition was satisfied is therefore an issue of fact materL al to a determination if there was a completed sale of the automobile to Campbell when possession was delivered to him.”
The facts affirmed by the trial court now warrant our concluding the contract of sale was complete once Sealco committed itself to lending the balance of the purchase price. Defendant would avoid liability by claiming the transaction between the litigants contemplated a cash sale which did not ripen into a contract of sale until the seller received the purchase price. He cites LSA-C.C. Art. 2487, which reads:
“The seller is not bound to make a delivery of the thing, if the buyer does not pay the price, and the seller has not granted him any term for the payment.” LSA-C.C. Art. 2487.
The article is inapplicable here because it refers to the obligations of the seller and states a circumstance justifying the seller’s refusal to deliver. It does not preclude voluntary delivery by the seller of the object of the sale prior to the time he has received the full purchase price. Had the seller failed to deliver the car after Sealco approved the loan, defendant would have been entitled to demand delivery.
Upon receipt of the cash deposit and Sealco’s assurance the loan had been approved plaintiff had the right to expect the funds would be transmitted by Sealco when the paper work was processed. Plaintiff, which delivered in good faith in reliance on Sealco’s approval and assurance, cannot be penalized because Sealco failed to meet its obligation. Nor should the defendant, who accepted delivery, be permitted to withdraw from the contract because the vehicle sharply decreased in value shortly after he received it.
Defendant further argues that if the agreement between plaintiff and defendant was subject to a suspensive condition, it could not ripen into a contract until the credit union transmitted the funds to plaintiff. This argument overlooks the undisputed fact that the deposit was given to hold the car until the loan was approved and delivery was made when the approval was communicated. Thus the approval, and not the lender’s transmittal of cash, was the uncertain condition which, once met, ripened the agreement into a contract.[2]
Finally, defendant characterizes the $25 deposit as earnest money and argues that plaintiff, who kept the deposit, cannot now sue for specific performance. He relies on LSA-C.C. Art. 2463, which states:
“But if the promise to sell has been made with the giving of earnest, each of the contracting parties is at liberty to recede from the promise; to wit: he who has given the earnest, by forfeiting it; and he who has received it, by returning the double.” LSA-C.C. Art. 2463.
We need not decide whether the deposit was earnest money. This defense fails because the article quoted contemplates a situation where one of the parties recedes from the agreement before the contract is performed. This is not a suit for specific performance. It is an action on account *850 stemming from a completed agreement of sale.
It should be noted this litigation is only concerned with the liability of the defendant to the plaintiff. Sealco was a defendant originally but that controversy was settled and the suit was dismissed as to Seal-co.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. See Canal Motors, Inc. v. Campbell, La.App., 241 So.2d 5.

. LSA-C.C. Art. 2467 provides, witli modifications not present here, as soon as the sale is completed the thing sold is at the risk of the buyer. And, in effect, LSA-C.C. Art. 2471 provides that when a sale is made with a suspensive condition the property sold is transferred to the buyer upon fulfillment of the condition.