# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-582


LAMAR TATE HUTCHINSON, JR.

VERSUS

TRUSSCO, INC., ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 83679
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

**AFFIRMED.  ADDITIONAL ATTORNEY'S FEES AWARDED.**


**James Isaac Funderburk**
**Funderburk & Herpin**
**Post Office Drawer 1030**
**Abbeville, LA   70511-1030**
**(337) 893-8140**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Lamar Tate Hutchinson, Jr.**

**Steven Griffith, Jr.**
**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
**201 St. Charles Avenue, #3600**
**New Orleans, LA   70170**
**(504) 566-5200**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Trussco, Inc.**
    **OMNI Energy Services Corp.**

AMY, Judge.

The plaintiff filed suit against his employer for wages due, along with statutory penalty wages and attorney's fees. The plaintiff claims the employer deducted what it deemed to be unsubstantiated charges to the corporate credit card from his final paycheck. The employer filed a reconventional demand seeking additional charges incurred on the credit card. The trial court found in favor of the plaintiff, awarding wages, penalty wages, and attorney's fees. The trial court denied the reconventional demand. The employer appeals. We affirm and award additional attorney's fees for work performed on appeal.

**Factual and Procedural Background**

The plaintiff, Lamar Hutchinson, was employed by Trussco, Inc. as its Director of Safety and Risk Management throughout the year of 2004. According to Mr. Hutchinson, his position entailed responsibility for the company's environmental, safety, and health programs. He explained that, depending on the severity of any accident that occurred, his position required him to perform accident investigations and, at times, follow up on investigations. Thus, testimony indicated that Mr. Hutchinson spent a great deal of time on the road.

During his tenure with Trussco, Mr. Hutchinson reported directly to its President and CEO, Edward Laborde. As part of this supervision, Mr. Laborde reviewed the statements from Mr. Hutchinson's corporate credit card. He testified that there were no irregularities in Mr. Hutchinson's use of the card during his oversight of the expenses. Mr. Hutchinson explained that he also had "day-to-day communication" with Vice President of Operations, Karl Comeaux.

Omni Energy Services Corporation acquired Trussco in June 2004. Mr. Hutchinson continued in his position as Director of Safety and Risk Management

with Trussco. Mr. Laborde continued in his capacity as Mr. Hutchinson's supervisor for several months until he left the company in January 2005. Mr. Comeaux also remained with Trussco after the acquisition and ultimately left his position in December 2004. Thereafter, Nolan J. Vice, who had served as a liaison between Omni and Trussco for a period, became Mr. Hutchinson's supervisor.

In his role as supervisor, Mr. Vice began receiving the statements for Mr. Hutchinson's corporate credit card. When he received the bill for the February cycle, Mr. Vice questioned a number of charges incurred. Of particular concern were cash advances totaling $2,450.00. The March statement presented similar questions. Mr. Vice contacted Mr. Hutchinson to reconcile the charges and to provide related receipts. The extent of the information that Mr. Hutchinson provided was at issue at trial.

Mr. Hutchinson contended that his expenditures were business related. With regard to the cash advances, he explained that the cash was necessary for ongoing workers' compensation investigations and that the expenditures were consistent with the instructions of Mr. Laborde and Mr. Comeaux. In this regard, Mr. Hutchinson, Mr. Laborde, and Mr. Comeaux testified that information pertaining to the workers' compensation investigations was kept among themselves so to limit the possibility of leaking information to the claimants.

Mr. Vice ultimately found the documentation of the charges insufficient and advised Mr. Hutchinson by e-mail that $500.00 would be deducted from his paycheck each pay period. Within days, Mr. Hutchinson tendered his resignation from Trussco. As no deductions had yet been taken from Mr. Hutchinson's paycheck, Trussco deducted the charges it denied from Mr. Hutchinson's final paycheck. According to

2

Omni Energy's Human Resource Director Lisa Simmons, Mr. Hutchinson's final check, dated May 5, 2005, reflected a $0.00 payment.

Mr. Hutchinson filed a "Summary Petition for Wages Due, Penalty Wages and Attorney's Fees" on July 18, 2005. He sought wages due under La.R.S. 23:631 as well as penalties equal to 90 days wages and reasonable attorney's fees under La.R.S. 23:632. Trussco answered the petition, asserting that the terms of its policy permitted it to offset or deduct the allegedly unauthorized charges. In a reconventional demand, Trussco claimed entitlement to additional charges not covered by the final paycheck.

Following a hearing, the trial court found in favor of Mr. Hutchinson and awarded the full amount of wages due, $8,369.45. The court also awarded $24,298.50[1] in penalty wages and $7,050.00 in attorney's fees. The court denied Trussco's reconventional demand.

Trussco appeals, assigning the following as error:

1. The Trial Court erred by denying Trussco the ability to offset wages owed to Mr. Hutchinson against the unsubstantiated charges.

2. The Trial Court erred by finding that the Defendants acted arbitrarily and in bad faith by offsetting unsubstantiated credit card charges against Mr. Hutchinson's wages.

3. The Trial Court erred by awarding an unreasonable amount of attorney's fees.

Mr. Hutchinson answers the appeal and seeks additional attorney's fees for work performed on appeal.

---

[1] The penalty was calculated based on Mr. Hutchinson's daily rate of pay, which was determined to be $269.98⅓.

3

**Discussion**

*Penalties and Offset*

In its first two assignments of error, Trussco questions the trial court's finding of a lack of good faith, which resulted in the award of penalty wages, and the determination that the deductions, or offsets, were not permissible.

Louisiana Revised Statutes 23:631(A)(1)(b) provides, in pertinent part:

> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

The provision further indicates that, in the event of a dispute as to the amount due, the employer "shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592." La.R.S. 23:631(B).

With regard to penalties, La.R.S. 23:632 is entitled "Liability of employer for failure to pay; attorney fees" and provides:

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

4

The Louisiana Supreme Court has instructed that the statutory penalty of La.R.S. 23:632 must be strictly construed and is subject to equitable defenses. *Beard v. Summit Inst. for Pulmonary Med. and Rehab., Inc.*, 97-1784 (La. 3/4/98), 707 So.2d 1233; *Carriere v. Pee Wee's Equipment Co.*, 364 So.2d 555 (La.1978). *See also Harvey v. Bass Haven Resort, Inc.*, 99-909 (La.App. 3 Cir. 2/2/00), 758 So.2d 264; *Hebert v. Ins. Center, Inc.*, 97-298 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, *writ denied*, 98-0353 (La. 3/27/98), 716 So.2d 888. To avoid the penalty of La.R.S. 23:632, the employer must demonstrate the presence of a good faith, non-arbitrary defense. *Beard*, 707 So.2d 1233. A finding related to an employer's good faith in failure to pay, or lack thereof, requires a factual determination and is thus subject to the manifest error standard of review. *Winkle v. Advance Products & Systems, Inc.*, 98-694 (La.App. 3 Cir. 10/28/98), 721 So.2d 983.

Trussco asserted that it was justified in deducting the questioned charges. The trial court, however, found inadequate proof of this good faith defense. In ruling, the trial court referenced *Sherry Richard v. Vidrine Automotive Services, Inc.*, 98-1020 (La.App. 1 Cir. 4/1/99), 729 So.2d 1174, wherein the first circuit found that compensation, in the form of a setoff, was a valid equitable defense to the withholding of wages. The first circuit explained that:

> Louisiana statutory law and jurisprudence recognize three kinds of setoff, or to use the codal term, compensation: legal, which is effected by operation of law, La.C.C. art. 1893; contractual, which is effected by the will of the parties, La. C.C. art. 1901; and judicial, which is effected by the courts, La.C.C. art. 1902.

*Id.* At 1178 (footnotes and citations omitted).

As noted by the trial court, *Richard* involved a situation wherein the employer "had a reasonable *policy* of collecting debts owed by departing employees by

deduction from the employee's final paycheck." *Id.* at 1178 (emphasis added). Thus, the first circuit concluded that there was no manifest error in the determination that the employee entered into an agreement "whereby any wages owed to her upon the termination of her employment would be setoff by any amount she owed to [the employer]." *Id.* at 1178. Accordingly, a contractual basis was found for the setoff in *Richard*.

In the present case, however, the trial court found that a contractual basis for the setoff was not established. It explained:

> [T]he setoff that took place was neither contractual nor was it proved to be Trussco's policy for departing employees. The evidence clearly showed that the plaintiff's previous supervisors had clearly ordered him to perform the surveillance activities to which his credit card charges were connected, and they guaranteed him reimbursement for expenses incurred as a result of these activities. When the change in supervisory personnel occurred, the plaintiff was still operating under his previous instructions and was not ordered to cease them. The very nature of his activities required confidentiality and secrecy as to most of the Trussco personnel in order for them to succeed.
>
> The fact that the new supervisor, Mr. Nolan Vice, disapproved of these surveillance activities upon learning of them and the further fact that he declined to accept the plaintiff's explanations for the expenses charged on his credit card do not constitute a good faith defense available to the employer. It is clear from the evidence that Trussco's decision to withhold $500/month from plaintiff's paycheck arose from the instructions given to the plaintiff by his previous supervisors. The plaintiff found this unfair and resigned. This set of circumstances does not give rise to a good faith defense of "setoff" available to the employer Trussco. The plaintiff is entitled to an award of penalties equal to the value of his wages for ninety (90) days pursuant to La.R.S. 23:632.

The record supports both the denial of the setoff and the award of penalties. First, Mr. Hutchinson explained that the charges were business related, a claim that the trial court was free to accept. Further testimony supports the trial court's determination that some of the expenditures were made in furtherance of instructions from Mr. Laborde and Mr. Comeaux. Mr. Hutchinson explained that the cash

6

advances on the credit card were related to workers' compensation investigations and that Mr. Laborde and Mr. Comeaux gave him permission to do "whatever [he] needed to do to get it done[.]" Mr. Laborde and Mr. Comeaux testified similarly, noting their knowledge of the investigations and also confirming that Mr. Hutchinson's position demanded independent operations for security reasons. Mr. Laborde explained that he was aware that corporate funds would be used by Mr. Hutchinson in the surveillance, whether the funds were reimbursed to Mr. Hutchinson or were incurred through cash advances on the corporate credit card. Mr. Laborde testified that, again for security reasons, he would not have paid for surveillance by checks issued through the accounting department.

Mr. Laborde further explained that Mr. Hutchinson was responsible for procuring office supplies for his department, an expenditure questioned at trial. Mr. Laborde stated that, although he required documentation when reconciling employee credit cards, receipts were not necessarily required if he was aware of the purpose of the expenditures. Evidence also supports a determination that Mr. Laborde's ongoing instructions were either inadequately conveyed to the new supervisor, Mr. Vice, or that new operating procedures were not explained to Mr. Hutchinson. The trial court could have found either event attributable to Trussco. Given the above testimony and related credibility determinations, the trial court was not manifestly erroneous in concluding that Trussco failed to prove that it was entitled to setoff the expenses claimed.

With regard to penalties, the trial court could have concluded that Trussco failed to establish that the final, adjusted paycheck was rendered pursuant to a policy permitting a deduction of disputed wages. While Trussco produced an employee

7

handbook explaining that deductions could be taken from a final paycheck, Trussco's argument is flawed insofar as the record indicates that Mr. Hutchinson did not sign an acknowledgment of the policy. In fact, Mr. Hutchinson denied ever receiving the employee handbook in question. Thus, the trial court permissibly found that the deductions were not made pursuant to a policy agreed to by Mr. Hutchinson. This determination distinguished the present matter from that in *Richard*, 729 So.2d 1174. In addition to the failure of evidence regarding the contractual basis for the setoff, neither did Trussco establish the existence of a "legal" or "judicial" basis.

Finally, Trussco's assertion that it had a permissible basis for the setoff at the time the final paycheck was reduced is obviously deficient in light of *Hebert*, 706 So.2d at 1012, wherein a panel of this court explained that: "The defense of setoff requires mutual obligations whereby each obligor owes an equally liquidated and demandable debt to each other." A debt is "liquidated when it is certain what is due and how much is due. That which has been certain as to amount due by agreement of parties or by operation of law." BLACK'S LAW DICTIONARY 642 (6th ed. abridged 1991). While Trussco claims that there were equally liquidated and demandable debts at the time it took the setoff from the final paycheck, it has not proven such. Rather, the sum owed to Trussco, if any, was very much in dispute and is the very nature of Mr. Hutchinson's claim.

For these reasons, the trial court's denial of the claimed setoff and the award of penalties are supported by the record. These assignments lack merit.

*Attorney's Fees - Quantum*

Finally, Trussco asserts that the $7,050.00 awarded in attorney's fees is excessive. It asserts that the award should be more in line with that awarded in

8

*Winkle*, 721 So.2d 983 (wherein this court found no error in the trial court's award of $2,500 for a case lasting two days and in which nine witnesses testified). As explained in *Winkle*, the factors to be considered in establishing a reasonable attorney's fee are:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge.

*Id.* at p. 992, quoting *Rivet v. State, Dept. of Trans. and Dev.*, 96-0145, pp. 11-12 (La. 9/5/96), 680 So.2d 1154, 1161.

Having reviewed the record before us in light of the above factors, we find no abuse of discretion in the quantum of attorney's fees awarded. Counsel assumed responsibility of the case on a contingency basis and successfully represented his client at trial. Additionally, the award took into account the extent of work performed and the diligence of counsel as it was reflective of billing records provided. We do not disturb this award on review.

*Answer*

In his answer to the appeal, Mr. Hutchinson seeks additional attorney's fees for work performed on appeal. As counsel for Mr. Hutchinson has successfully defended this matter, we award an additional $3,000.00.

**DECREE**

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assessed to the appellants, Trussco, Inc., and OMNI Energy Services Corp. Additional attorney's fees in the amount of $3,000.00 are awarded for work performed on appeal.

**AFFIRMED. ADDITIONAL ATTORNEY'S FEES AWARDED.**